```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
                          HAMMOND DIVISION

RESPONSE ACQUISITION LLC,        )
                                 )
          Plaintiff              )
                                 )
     v.                          )   Case No. 2:05 cv 423
                                 )
UNITED STATES STEEL CORPORATION, )
                                 )
          Defendant              )
```

OPINION AND ORDER

This matter is before the court on the Motion for Summary Judgment filed by the plaintiff, Response Acquisition, LLC ("Response"), on March 31, 2006. For the following reasons, this motion is **DENIED**.

Background

The plaintiff, Response, is an "industrial service firm specializing in providing water blasting, wet/dry vacuum services, liquid vacuum truck services and sewer cleaning." (MSJ, p. 1)  On July 30, 2003, Response and US Steel ("USS") entered into a five-year "Blanket Agreement" governing any work that Response may perform for US Steel. (MSJ Exh. 1)

Under the Blanket Agreement, USS expressly disclaims any guarantee of work for Response.  If USS requests work from Response, the Agreement states that Response will perform the work pursuant to separate "(i) purchase order(s), release(s) or other document(s) as are issued by USS to Contractor and/or (ii) contract(s) or agreement(s) as are entered into between the parties" during the term of the Blanket Agreement.  (MSJ Exh 1,

p. 1)   Pursuant to Article 1.3, the terms of the Blanket Agreement extend to any purchase order[1] with Response.  In turn, Article 4.1 provides that "[t]he contract price(s), invoicing and payment terms, the specific type, nature, description and scope of Work, the contract schedule, specifications and other conditions applicable to Contractor's performance of the Work governed by this Agreement shall be as are specifically described and set forth under each purchase order."

Article 29.3(a) allows USS to terminate the Blanket Agreement for its convenience upon thirty days written notice.  However, clause (b) states:

> If USS' termination hereunder is for USS' convenience, Contractor shall be entitled only to an equitable amount to cover its direct costs reasonably expended or committed to third parties and overhead costs reasonably incurred prior to such termination and Contractor's reasonable costs for effecting a prompt, orderly termination of the affected Work (less salvage value and amount recoverable by Contractor) plus an equitable profit in relation thereto.  Contractor agrees that the remedy provided under this Article 29.3 shall be the sole and exclusive remedy of Contractor for any termination by USS for its convenience hereunder, and Contractor waives any and all other claims, damages or remedies whatsoever relating thereto.

Finally, Article 33.1 states that the entire agreement between USS and Response is governed by the terms set forth in the Blanket Agreement, and merges "any and all prior collateral representations, promises and conditions in connection with the

---

[1] The court uses the term "purchase order" to refer to any of the contractual documents (purchase order, release, contract, agreement) described in the Whereas clauses at the beginning of the Blanket Agreement.

subject matter herein."

On June 3, 2005, USS terminated the Blanket Agreement under the convenience clause. Response seeks summary judgment on the issue of liability so that damages may be determined.

## Discussion

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986); *Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004); *Branham v. Snow*, 392 F.3d 896, 901 (7th Cir. 2004); *Windle v. City of Marion, Indiana*, 321 F.3d 658, 660-61 (7th Cir. 2003), *cert. denied*, 540 U.S. 873, 124 S.Ct. 873, 157 L.Ed.2d 133 (2003).  The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party.  *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); *Lawrence*, 391 F.3d at 841. A fact is material if it is outcome determinative under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); *Ballance v. City of Springfield, Illinois Police Department*, 424 F.3d 614, 616 (7th Cir. 2005); *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004); *Palmer v. Marion County*, 327 F.3d 588, 592 (7th Cir. 2003).  Even if the facts are not in dispute,

summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts.  *Spiegula v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004); *Hines v. British Steel Corporation*, 907 F.2d 726, 728 (7th Cir. 1990).  Finally, summary judgment "will not be defeated simply because motive or intent are involved."  *Roger v. Yellow Freight Systems, Inc.*, 21 F.3d 146, 148 (7th Cir. 1994).  *See also Miller v. Borden, Inc.*, 168 F.3d 308, 312 (7th Cir. 1999); *Plair v E.J. Brach & Sons, Inc.*, 105 F.3d 343, 346 (7th Cir. 1997); *United Association of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1268 (7th Cir. 1990).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.
>
> *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511

*See also* *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 149-151, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105, 120-22 (2000)

(setting out the standard for a directed verdict); *Celotex Corp.*, 477 U.S. at 322-323, 106 S.Ct. at 2553; *Branham*, 392 F.3d at 901; *Lawrence*, 391 F.3d at 841; *Hottenroth*, 388 F.3d at 1027 (stating that a genuine issue is one on which "a reasonable fact finder could find for the nonmoving party"); *Schuster v. Lucent Technologies, Inc.*, 327 F.3d 569, 573 (7th Cir. 2003)(stating that a genuine issue exists and summary judgment is inappropriate if there is sufficient evidence for a jury to return a verdict for the nonmoving party).

As a federal court sitting in diversity, this court must apply Indiana substantive law to the contract in dispute. *See Charter Oak Fire Insurance Company v. Hedeen & Companies*, 280 F.3d 730, 735 (7th Cir. 2002).

The intent in an unambiguous contract is determined by the plain and ordinary terms within the four corners of the contract. *Perfect v. McAndrew*, 798 N.E.2d 470, 479 (Ind. App. 2003); *Dempsey v. Carter*, 797 N.E.2d 268, 273 (Ind. App. 2003), *transfer denied*, 812 N.E.2d 803 (Ind. 2004).  An unambiguous contract must be enforced as written. *See Perfect*, 798 N.E.2d at 479. The court will find that "[a] contract is ambiguous only if reasonably intelligent people could honestly find the contract's provisions susceptible to more than one interpretation." *Dempsey*, 797 N.E.2d at 273. A contract is not ambiguous merely because the parties disagree as to the meaning. *Crowe v. Boofter*, 790 N.E.2d 608, 610-611 (Ind. App. 2003); *Roy A. Miller & Sons, Inc. v. Industrial Hardwoods Corporation*, 775 N.E.2d 1168, 1173 (Ind.

5

App. 2002).

The Blanket Agreement clearly states that if work is performed pursuant to a purchase order, the work will be governed by the terms of the purchase order. Taken together, Articles 1.3, 4.1, and 29.3 establish that the damages provision of Article 29.3 also governs the work, but only during the terms of a purchase order. For example, Article 29.3(b) specifically contemplates damages in the event of "affected Work." The Agreement further disavows any guarantee of ongoing work outside of the purchase order arrangement. In sum, the damages provision of Article 29.3 only becomes relevant if a purchase order was in effect at the time USS terminated the Agreement. If no purchase order was in effect, then USS cannot be liable for breach of contract.

Response's arguments regarding assurances made by USS are meritless. According to Response, USS assured Response that the contract USS held with Response's predecessor would be offered to Response and that USS further would extend the current term of contract five years. In the first instance, it is undisputed that USS fulfilled both promises. The 2003 Blanket Agreement represents the renewed five year contract. Second, Article 33.1 of the Blanket Agreement merges any collateral representations into the written document. Thus, even if USS' alleged representation could be construed as a promise of ongoing work for five years, this promise was subsumed into the written Agreement in 2003. Finally, Response has waived any argument that the contract

6

is ambiguous or fraudulently induced by failing to raise these claims in the motion for summary judgment.  See *Pugel v. Board of Trustees of the University of Illinois*, 378 F.3d 659, 669 (7th Cir. 2004) (*quoting* *James v. Sheahan*, 137 F.3d 1003, 1008 (7th Cir. 1998)); *AT&T Wireless PCS, Inc. v. Town of Porter*, 203 F.Supp.2d 985, 989 (N.D. Ind. 2002) Indiana law does not permit the court to consider parole evidence otherwise.  See *Vernon Fire & Casualty Insurance Company v. Thatcher*, 285 N.E.2d 660, 666-67 (Ind. App. 1972).

It appears that at least one purchase order was in effect at the time USS terminated the Agreement.  (Donald Hudgens Aff. Exh. B)  However, neither party has briefed the matter, and so summary judgment on the issue of liability is not appropriate at this time.  USS does not seek summary judgment on damages.

_____

For the forgoing reasons, the Motion for Summary Judgment filed by the plaintiff, Response Acquisition, LLC on March 31, 2006 is **DENIED.**

ENTERED this 1st day of August, 2006


                              s/ ANDREW P. RODOVICH
                                 United States Magistrate Judge

7