```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
                          HAMMOND DIVISION
```

RESPONSE ACQUISITION LLC,       )
                                )
            Plaintiff           )
                                )
       v.                       )   Case No. 2:05 cv 423
                                )
UNITED STATES STEEL CORPORATION,)
                                )
            Defendant           )

OPINION AND ORDER

This matter is before the court on the Motion for Clarification of Order filed by the plaintiff, Response Acquisition, LLC ("Response"), on August 11, 2006. For the reasons set forth below, this motion is **GRANTED**.

Background

On November 17, 2005, Response filed a complaint in this court asserting two counts against United States Steel ("USS") arising from U.S. Steel's termination of a contract entered into by the parties. Specifically, Response sought damages for costs committed to third parties, costs related to demobilization of worksites, and expected profit following the "termination for convenience" by U.S. Steel. (Complaint ¶¶ 24, 25, 26) Response also sought a declaratory judgment arising from the same events.(Complaint ¶ 29)

The parties' relationship was governed by a "Blanket Agreement" which established a set of general provisions regarding the work Response would perform for USS. This agreement defined the

term "Work" as any services performed by Response pursuant to separate purchase orders, written contracts, or verbal orders. (Art. 1.1) The provision further stated that these separate contracts "shall in combination with [the blanket agreement] constitute the Contract Documents . . . and shall exclusively govern the Work covered thereby and the legal relationship between the parties." (Art. 1.1)

The Blanket Agreement's "Termination" provisions stated that USS reserved the right to terminate the contract for its convenience, with or without cause. (Art. 29.3(a)) A subsequent provision stated that in the event of a termination for convenience, the terminated party was entitled to damages for "direct costs," "overhead costs," and the costs associated with "effecting a prompt termination of the affected Work." (Art. 29.3(b))

On June 3, 2005, USS terminated the Blanket Agreement according to Article 29.3(a). On March 31, 2006, Response filed a motion for summary judgment. Response argued that USS terminated the contract according to Article 29.3(a) and further asked this court to hold that the remedy provision of Article 29.3(b) was applicable. Response argued that, though the amount of damages was a question for a jury, USS's liability for damages was capable of resolution on summary judgment. (Memorandum in Support of Summary Judgment, p. 6)

This court's Opinion and Order of August 1, 2006, recognized that the standards governing the parties' relationship were contained in a series of contracts. The Blanket Agreement sup-

2

plied a set of basic terms. Separate purchase orders defined the "work" that was to be performed by Response.  Together, these documents constituted the contract governing the parties' relationship. Accordingly, this court held that "the damages provision of Article 29.3 only becomes relevant if a purchase order was in effect at the time USS terminated the Agreement." (Opinion and Order, p. 6)

This court also stated that if USS had made representations outside the contract terms that Response was guaranteed work for five years, Article 33.1 of the Blanket Agreement merged such collateral representations into the written document. Finally, the court stated that claims of contract ambiguity or allegations of fraud were waived because they were not raised in the motion for summary judgment. Because neither party had addressed whether there were any purchase orders in effect at the time that USS terminated the agreement, or, in the Contract's terms, any "Work," the court could not draw any conclusions regarding the fact of liability or the amount of damages.

## Discussion

Response seeks a specific finding from this court that USS terminated the parties' relationship pursuant to Article 29.3(a) of the contract. This conclusion was stated in the court's prior order and, in fact, is not disputed between the parties. For instance, in USS's opposition to Response's motion for summary judgment, USS stated that "Response Acquisition's services had been terminated for USS' convenience, as permitted by Article 29

3

of the Blanket Agreement." (Opposition to Summary Judgment ¶ 11)

In addition to a conclusive statement that USS terminated the agreement according to Article 29.3(a), Response also sought a statement that USS is liable for damages according to Article 29.3(b).(Mem. in Support, p. 5) As made clear in the parties' agreement as well as this court's order, any damages due Response are determined in relation to "Work" that was on-going at the time the termination occurred, as described by a purchase order according to Article 1.1. There was no evidence before the court that addressed this question. Because the contract provided for damages only in the event that there was "affected Work," without evidence of any affected work, the court could not grant summary judgment on the issue of liability for damages.

Response next seeks clarification of the court's statement that "Response has waived any argument that the contract is ambiguous or fraudulently induced by failing to raise these claims in the motion for summary judgment." (Opinion and Order, pp. 6-7) Response seeks a statement that these issues were not waived and that "Response is not precluded from pursuing all of its claims recited in the Complaint." (Motion for Clarification, p. 3)

The cases cited by the court first make clear that the waiver of these claims was specific to the briefing on the plaintiff's motion for summary judgment. See **Pugel v. Board of Trustees of University of Illinois**, 378 F.3d 659, 669 (7th Cir. 2004)(*quoting* **James v. Sheahan**, 137 F.3d 1003, 1008 (7th Cir.

4

1998) ("Arguments raised for the first time in a reply brief are waived."). There is no suggestion that preclusive affect is to be given, or the law of the case doctrine applied, to the issues of ambiguity or fraudulent inducement. These issues were raised only in the plaintiff's reply brief and, consequently, were not briefed by parties. Because these issues were not fully addressed by the parties, they also were not addressed by the court. Because preclusive affect, in this instance most likely under the law of the case doctrine, is given only to issues that are necessarily decided, it follows that these issues are not removed from this case by virtue of the court's order. *See **Analytical Engineering, Inc. v. Baldwin Filters, Inc**.*, 425 F.3d 443, 454 (7th Cir. 2005)("The law of the case doctrine is a rule of practice which recited that when an issue is *once litigated and decided*, that should be the end of the matter.")(emphasis added).

However, in the briefing on the plaintiff's motion for clarification, the parties dispute whether Response's complaint pleads a claim based on the tort of fraud or misrepresentation. In addressing this question, the court first must address an initial choice of law question in this matter. As noted in the Opinion and Order, a federal court sitting in diversity applies federal procedural law and Indiana substantive law. (Opinion and Order, p. 5)(*citing **Charter Oak Fire Insurance Company v. Hedeen Companies***, 280 F.3d 730, 735 (7th Cir. 2002)). This in turn requires the application of Indiana choice of law doctrine. *See **Nickles v. Heleine***, 460 F.Supp.2d 886, 888 (S.D. Ind. 2005). In

5

general, Indiana law respects parties' effective choice of law clause; otherwise, Indiana follows the Restatement (Second) of Conflict of Laws and applies the law of the forum with the most intimate contacts to the transaction. *Travelers Indemnity Company v. Summit Corporation of America*, 715 N.E.2d 926, 931 (Ind. App. 1999). This question has not been addressed by the parties. However, the court recognizes that the Blanket Agreement calls for the application of Pennsylvania law. For the purposes of this motion, the choice of law question is a subsidiary concern.

Regardless of the substantive law, the sufficiency of the pleadings is measured according to the Federal Rules. *See F. McConnell & Sons, Inc. v. Target Data Systems, Inc*., 84 F.Supp.2d 980, 983 (N.D. Ind. 2000). Federal Rule of Civil Procedure 9(b) requires that claims based on fraud must be stated with particularity. "Rule 9(b) requires that facts such as the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff be alleged in detail." *Hefferman v. Bass,* 467 F.3d 596, 601 (7th Cir. 2006).

Response points to its general allegations in support of its contention that it has plead fraud sufficiently. The complaint states:

* * *

> 9. USS assured the members of RESPONSE that the current contract with [Response's predecessor] would be fulfilled with RESPONSE as long as it was operated in a safe and quality conscientious manner.

6

>    10. RESPONSE paid substantial sums of money
>    to acquire [the predecessor company] and
>    after the purchase at a significant cost,
>    invested in substantial capital expenditures,
>    including additional equipment to improve
>    both the quality and production and further
>    investment into safety and training to bene-
>    fit both USS and RESPONSE.

These allegations fall far short of the requisite particularity required by the rules. Response does not state the identity of the person making an alleged misrepresentation and does not identify the time or place of the misrepresentation. In fact, Response never alleged that USS' statement - that the contract with Response's predecessor would be fulfilled - is a misrepresentation. Response made no allegation that the terms of the contract governing its relationship with USS was any different from that governing the predecessor company.

Response's complaint sought only the damages that were described in Article 29.3(b) of the contract and a declaration of those same damages. In addition to Response's failure to plead fraud, there is no indication that Response ever sought recovery beyond contract damages. Under no reading of the complaint can it be said to state a claim for fraud. Instead, Response's current argument recasts its contract claim into a tort claim.

>    [U]nder Pennsylvania law fraud in the perfor-
>    mance of a contract is barred by the Gist of
>    the Action doctrine. The gist of the action
>    doctrine precludes plaintiffs from recasting
>    ordinary breach of contract claims into tort
>    claims. The gist of the action doctrine bars
>    claims that: (1) arise solely from a contract
>    between the parties; (2) where the duties
>    allegedly breached were created and grounded

7

>     in the contract itself; (3) where the liabil-
>     ity stems from a contract; and (4) where the
>     tort essentially duplicates a breach of con-
>     tract claim or the success of which is wholly
>     dependent on the terms of the contract. (in-
>     ternal quotations omitted)
>
>     ***Global Payments Direct v. EVS Holding Co.,
>     Inc***., 2005 WL 2100102 at *23 (Pa.Com.Pl.
>     2005)*(citing **eToll, Inc. v. Elias/Savion
>     Advertising Inc**., 811 A.2d 10, 14 (Pa.Super.
>     2002)*

This same approach to the interplay between a fraud claim arising from the same events as a contract claim is recognized in Indiana as well. ***Tobin v. Ruman***, 819 N.E.2d 78, 86 (Ind. App. 2005)("Tobin's fraud claim is, in fact, merely a repackaged version of his breach of contract claim . . . the allegations making up his fraud claim amount to a series of misrepresentations stemming from and about the contract itself.").

At a January 26, 2007 status conference, the court established a March 30, 2007 deadline for filing amended pleadings. Accordingly, any claims of fraud asserted by the plaintiff will be measured according to this standard.

The claims plead by Response remain pending. As this court has noted, whether the events in this matter give rise to a claim for damages is dependent on whether a purchase order was in effect at that time USS terminated the agreement. Neither party has indicated whether this is the case. The court cannot further clarify this matter in the absence of this information.

_____

For the foregoing reasons, the Motion for Clarification filed by the plaintiff, Response Acquisition, LLC, on August 11, 2006, is **GRANTED**.

ENTERED this 21st day of February, 2007


                                    s/ ANDREW P. RODOVICH
                                       United States Magistrate Judge