```
                UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF INDIANA
                      HAMMOND DIVISION
```

RESPONSE ACQUISITION LLC,    )
                             )
            Plaintiff        )
                             )
       v.                    )   Case No. 2:05 cv 423
                             )
UNITED STATES STEEL CORPORATION,)
                             )
            Defendant        )

OPINION AND ORDER

This matter is before the court on the Motion for Summary Judgment (DE 54) filed by the defendant, United States Steel Corporation, on May 29, 2008, and the Motion to Strike (DE 64) filed by the defendant on July 21, 2008. For the reasons set forth below, the Motion to Strike is **DENIED**, and the Motion for Summary Judgment is **GRANTED**.

Background

In 2003, Ryan Niles ("Ryan") and Dan Niles ("Dan") explored the purchase of Response Maintenance, Inc., ("Response Maintenance") in an effort to expand into the industrial cleaning business. (Pltf. Resp. to Mot. Summ. J., ) Response Maintenance had provided services to steel mills and refineries in Northwest Indiana for the prior eight years. Specifically, Response Maintenance provided water blasting, vacuum truck operation, and general cleaning labor at United States Steel Corporation's ("USS") East Chicago and Gary facilities. USS was Response Maintenance's largest customer, comprising over 90 percent of Response Maintenance's business. (Pltf. Resp. to Mot. Summ. J., p. 2) Response Maintenance conducted this business under a five

year contract known as a Blanket Agreement, and three years remained on that contract. (Am. Compl. ¶ 7)

In mid-July of 2003, Ryan and Dan had a luncheon meeting with two USS employees and the owner of Response Maintenance. At this meeting, Ryan offered a presentation detailing their plans and improvements for the business once it was purchased. Because the Nileses had decided that retaining USS as a customer was vital to the success of Response Maintenance, they sought assurances from USS that it would maintain the existing business relationship with Response Maintenance if they purchased the company. (Am. Compl. ¶¶ 7-8) The Nileses would not have continued with the substantial expenditure required to purchase Response Maintenance without these assurances of a long-term relationship with USS. (Am. Compl. ¶ 9) The USS representatives agreed to continue the relationship by assigning the remaining time under the Blanket Agreement to the newly purchased company, permitting the Nileses' new venture, Response Acquisition ("Response"), to continue the work of its predecessor. (Am. Compl. ¶ 10; Dep. of Ryan Niles pp. 87, 94)

On July 24, 2003, the Nileses acquired the assets of Response Maintenance, spending approximately two million dollars for its assets and assumption of its liabilities. In addition, they purchased specialized equipment and hired skilled employees to work for the new entity, Response. (Dep. of Ryan Niles pp. 76, 101-2) Shortly thereafter, on July 30, 2003, USS issued a new five year agreement to Response rather than allowing the

assignment of the remainder of its contract with Response Maintenance. This effectively extended the existing relationship between the two entities for another two years. (Am. Compl. ¶ 12; Dep. of Ryan Niles pp. 26, 51, 62) This new Blanket Agreement was identical in its terms to the prior Blanket Agreement that Response Maintenance had worked under. (Def. Br. in Supp. of Mot. Summ. J., p. 2)

The Blanket Agreement's purpose was to "avoid repetitive negotiations" for each of the various jobs and to "govern and control . . . the legal relationship between the parties" relative to the performance of work during its term. (Blanket Agreement, Ex. A. p. 1) Under it, USS expressly disclaimed any guarantee of work for Response. If USS requested work from Response, the Agreement stated that Response would perform the work pursuant to separate "(i) purchase order(s), release(s) or other document(s) as are issued by USS to Contractor and/or (ii) contract(s) or agreement(s) as are entered into between the parties" during the term of the Blanket Agreement. (Blanket Agreement, Ex. A, p. 1) Article 1.3 of the contract stated that the terms of the Blanket Agreement extended to any purchase order that USS issued to Response. Article 4.1 provided that "[t]he contract price(s), invoicing and payment terms, the specific type, nature, description and scope of Work, the contract schedule, specifications and other conditions applicable to Contractor's performance of the Work governed by this Agreement shall be as are specifically described and set forth under each purchase

3

order." (Blanket Agreement, Art. 4.1) Article 19, titled "Governing Laws and Regulations" declared that the "Agreement shall be governed by the laws of the Commonwealth of Pennsylvania" with the exception of Pennsylvania conflict of laws rules. (Blanket Agreement, Article 19.1)

Article 29.3(a) allowed USS to terminate the Blanket Agreement for its convenience upon 30 days written notice. Clause (b) continued:

> If USS's termination hereunder is for USS's convenience, Contractor shall be entitled only to an equitable amount to cover its direct costs reasonably expended or committed to third parties and overhead costs reasonably incurred prior to such termination and Contractor's reasonable costs for effecting a prompt, orderly termination of the affected Work (less salvage value and amount recoverable by Contractor) plus an equitable profit in relation thereto. *Contractor agrees that the remedy provided under this Article 29.3 shall be the sole and exclusive remedy of Contractor for any termination by USS for its convenience hereunder*, and Contractor waives any and all other claims, damages or remedies whatsoever relating thereto. (emphasis added)

Finally, Article 33.1 stated that the entire agreement between USS and Response was governed by the terms set forth in the Blanket Agreement, merging "any and all prior collateral representations, promises and conditions in connection with the subject matter herein."

Sometime in 2004, USS reorganized its purchasing methods. All USS contractors, including Response, were advised that the work they did for the corporation would be subject to re-bid. (Def. Br. in Supp. of Mot. Summ. J., p. 2) Response, understand-

4

ing that it was a companywide rebidding, failed to bid on the work that it already was performing under the Blanket Agreement, mistakenly assuming that its work was somehow exempt from the bidding process.  (Dep. of Ryan Nile, p. 127)  Seeing the re-bid as an opportunity to expand its relationship with USS, Response bid on future work in other departments, stating in its bid that Response had been acquired "contingent on and subject to Gary Works Senior Purchasing committing to a five year contract." (Aff. of Ryan Niles ¶ 16; Pltf. App. to Resp. to Mot. Summ. J., Ex. 3)  However, Response failed to win any of this "new" business and also lost the work that it had been performing under the Blanket Agreement to parties that successfully bid on that work. On June 3, 2005, USS terminated the Blanket Agreement with Response under the convenience clause.  (Pltf. App. to Resp. to Mot. Summ. J., Ex. 4)

On November 17, 2005, Response filed a complaint in this court, and it was amended on April 3, 2007, to assert three counts against USS arising from the termination of the Blanket Agreement.  Specifically, Response sought damages under a promissory estoppel theory for costs it paid to acquire Response Maintenance and specialized equipment used to improve the service provided to USS and spent in reliance on promises made by USS representatives.  Response also sought damages under a breach of contract theory for expected profits for the remainder of its five year term under the Blanket Agreement.  Last, Response alleged fraudulent inducement, stating that USS representatives

knowingly misled Response into the purchase of Response Maintenance.

USS has filed a Motion for Summary Judgment addressing all three counts. USS asserts that the promissory estoppel claim fails because the existence of a valid contract between the parties precludes a promissory estoppel claim. USS also maintains that there was no detrimental reliance required for a promissory estoppel claim because Response requested and then received the continuation of the Blanket Agreement. USS also contends that the breach of contract claim fails because Article 29.3 of the Blanket Agreement is valid, and Response has made no claim for failure of payment for services rendered under the Agreement. Finally, USS alleges that the fraudulent inducement count fails on its elements.

## Discussion

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *See* **Celotex Corp. v. Catrett**, 477 U.S. 317, 322-23, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986); **Williams v. Excel Foundry & Machine, Inc.**, 489 F.3d 309, 310 (7th Cir. 2007); **Treadwell v. Office of the Illinois Secretary of State**, 455 F.3d 778, 781 (7th Cir. 2006); **Branham v. Snow**, 392 F.3d 896, 901 (7th Cir. 2004). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue

6

must be resolved against the moving party. *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L. Ed.2d 142, 155 (1970); *Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A fact is material if it is outcome determinative under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); *Ballance v. City of Springfield, Illinois Police Department*, 424 F.3d 614, 616 (7th Cir. 2005); *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004); *Palmer v. Marion County*, 327 F.3d 588, 592 (7th Cir. 2003). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts. *Spiegula v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004); *Hines v. British Steel Corporation*, 907 F.2d 726, 728 (7th Cir. 1990). Finally, summary judgment "will not be defeated simply because motive or intent are involved." *Roger v. Yellow Freight Systems, Inc.*, 21 F.3d 146, 148 (7th Cir. 1994). See also *Miller v. Borden, Inc.*, 168 F.3d 308, 312 (7th Cir. 1999); *Plair v E.J. Brach & Sons, Inc.*, 105 F.3d 343, 346 (7th Cir. 1997); *United Association of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1268 (7th Cir. 1990).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.
>
> ***Anderson***, 477 U.S. at 250, 106 S.Ct. at 2511

*See also* ***Scott v. Harris***, ___ U.S. ___, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007)("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment."); ***Celotex Corp.***, 477 U.S. at 322-23, 106 S.Ct. at 2553; ***Branham***, 392 F.3d at 901; ***Lawrence***, 391 F.3d at 841; ***Hottenroth***, 388 F.3d at 1027 (stating that a genuine issue is one on which "a reasonable fact finder could find for the nonmoving party"); ***Schuster v. Lucent Technologies, Inc.***, 327 F.3d 569, 573 (7th Cir. 2003).

In its Motion to Strike, USS challenges the Affidavit of Ryan Niles. To support a claim that has been challenged on summary judgment, an affidavit may not be based upon "self-serving statements . . . without factual support in the record." ***Thanongsinh v. Board of Education***, 462 F.3d 762, 781 (7th Cir. 2006)(*quoting* ***Butts v. Aurora Health Care, Inc.***, 387 F.3d 921,

925 (7th Cir. 2004). Rather, Rule 56(e) requires that an affidavit must be "made on personal knowledge [and] set forth facts as would be admissible in evidence." This rule further provides that an affidavit offered in opposition to a motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial." *Drake v. Minnesota Mining and Manufacturing Company*, 134 F.3d 878, 886 (7th Cir. 1998)(*quoting* *Hadley v. County of DuPage*, 715 F.2d 1238, 1243 (7th Cir. 1983)("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.") In addition, a party resisting summary judgment may not "patch-up potentially damaging deposition testimony with a contradictory affidavit." *Commercial Underwriters Insurance Company v. Aires Environmental Services, Ltd.*, 259 F.3d 792, 799 (7th Cir. 2001). *See also* *Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292 (7th Cir. 1996)("[T]he law of this circuit does not permit a party to create an issue of fact by submitting an affidavit whose conclusions contradict deposition or sworn testimony.").

The contested portions of the affidavit are the final five paragraphs in which Ryan attests to Response's costs remaining on contracts it held with employees and telephone services, along with a building lease. Ryan then lists the costs of equipment Response purchased for use in its work under the Blanket Agreement, followed by an approximation of the cost of developing a

9

safety program for the work performed at USS.  Finally, he
approximates Response's demobilization costs upon termination of
the relationship at $45,000.

USS contends that these estimations of damages are incompetent and unsubstantiated.  USS propounded interrogatories to
Response requesting documentation of direct costs expended by
Response or committed to third parties, overhead costs incurred
prior to termination, costs for mobilization and withdrawal from
the worksite, expected profits, and any and all unpaid invoices
to USS.  Response's answers to all contained pledges to produce
the substantiating business records.  These business records are
neither before the court nor were produced to USS at the time of
the briefing for the motions here.  Due to this failure to
produce the business records, USS deems the affidavit summarizing
these "damages" to be incompetent.

Though it is true that the figures listed in the affidavit
are unsubstantiated, Ryan, as an executive of Response, may
testify to the financial state of the company he owns.  The
portion of the affidavit in question simply lists Response's
costs.  Ryan does not mention the word "damages" anywhere in
these paragraphs, nor does he refer to the remedy portion of the
termination for convenience clause, Section 29.3(b), to specifically claim that any of these costs fall under that contract
provision.  Although the record does not contain documentation to
support these costs, there is nothing self-serving as to a
business owner with personal knowledge listing the costs his

company has incurred.  This list does not attempt to change any damaging testimony to create genuine issues in opposition to the Motion for Summary Judgment.  Accordingly, USS's Motion to Strike, in Pertinent Part, Affidavit of Ryan A. Niles, is **DENIED**.

Before addressing the summary judgment on Response's three claims, the choice of law must be discussed.  A federal court sitting in diversity applies federal procedural law and the substantive law of the state in which it sits. ***Charter Oak Fire Insurance Company v. Hedeen & Companies***, 280 F.3d 730, 735 (7th Cir. 2002).  Here, the court must apply Indiana substantive law to the contract dispute.  As clarified in this court's Opinion and Order of February 21, 2007, this, in turn, requires the application of Indiana choice of law doctrine. ***Nickles v. Heleine***, 460 F.Supp.2d 886, 888 (S.C. Ind. 2005).  Indiana law respects the parties' choice of law clause in a contract. Otherwise, Indiana follows the *Restatement (Second) of Conflict of Laws* and applies the law of the forum with the most intimate contacts to the transaction. ***Travelers Indemnity Company v. Summit Corp. of America***, 715 N.E.2d 926, 931 (Ind. App. 1999).

A validly chosen choice of law clause in a contract relieves the court of exploring the contacts between the parties and Indiana. See ***Nucor Corp. v. Aceros y Maquilas de Occidente, S.A. de C.V.***, 1993 WL 723500 at *4 (S.D. Ind. 1993)("In any action based on an alleged contract *in which the parties have not specified the law that will govern their relationship*, applicable law is determined by a 'most intimate contact' or 'most signifi-

cant relationship' test.")(emphasis added); ***Sheldon v. Munford, Inc.***, 660 F.Supp. 130, 134 (N.D. Ind. 1987)("[B]efore applying the intimate-contacts test, the court must determine whether the parties to the present contract have already chosen which state's law is to apply."). Indiana's choice of law "honors the parties' choice of law in an effort to give the effect to their manifest intent . . . ." ***Sheldon***, 660 F.Supp. at 130 (*citing* ***South Bend Consumers Club v. United Consumers Club***, 572 F.Supp. 209, 212 (N.D. Ind. 1983).

As to which claims the choice of law clause applies, USS contends that the Seventh Circuit has established that a forum selection clause in a valid contract applies to any dispute which arises from the contractual relationship. ***American Patriot Insurance Agency, Inc. v. Mutual Risk Management, Ltd.***, 364 F.3d 884, 889 (7th Cir. 2004)("[A] dispute over a contract does not cease to be such merely because instead of charging breach of contract the plaintiff charges a fraudulent breach, or fraudulent inducement, or fraudulent performance."). The Indiana Court of Appeals has cited ***American Patriot*** in applying a forum selection clause to both tort and statutory claims which arise from a contract relationship, finding that all of the claims arising from the contract are subject to the forum selection clause. ***Dexter Axle Co. v. Baan USA, Inc.***, 833 N.E.2d 43, 50 (Ind. App. 2005). *See also* ***American Patriot***, 364 F.3d at 899 ("As for the fact that the defendants are charged with fraud rather than

breach of contract, this can get the plaintiff nowhere in its efforts to get out from under the forum-selection clause.").

USS argues that the issue of forum selection is analogous to the issue of choice of law provisions. However, for both the promissory estoppel and fraud claims, the choice of law issue is moot. As the analysis herein will demonstrate, the outcome is identical under both Indiana and Pennsylvania law: the basic elements and application of promissory estoppel and fraud in the inducement claims in both jurisdictions are alike. The failure of Response to support one or more elements under Pennsylvania law is echoed when the same claims are analyzed under Indiana law.

Here, the Blanket Agreement's choice of law clause is plain and unambiguous, and the introductory clauses unambiguously state its scope to include "the legal relationship between the parties relative thereto." Honoring the parties' choice of law when they entered into the Blanket Agreement, this court will apply the law of Pennsylvania exclusively to the breach of contract claim.

Count I of Response's amended complaint alleges that USS made promises upon which it reasonably relied to induce Response to acquire Response Maintenance. The doctrine of promissory estoppel is invoked as an equitable remedy to avoid injustice by making enforceable a promise made by one party to the other when the promisee relies on the promise and therefore changes his position to his own detriment. *Restatement 2d Contracts* § 90.

In order to maintain an action in promissory estoppel, a party must demonstrate:

> 1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; 2) the promisee actually took action or refrained from taking action in reliance on the promise; and 3) injustice can be avoided only by enforcing the promise.
>
> ***Crouse v. Cyclops Industries***, 745 A.2d 606, 610 (Pa. 2000)

See ***McCalment v. Eli Lilly & Co.***, 860 N.E.2d 884, 895 (Ind. App. 2007)(also based on *Restatement 2d of Contracts* § 90, stating that in the absence of a contract, the aggrieved party may avoid harsh results by invoking the doctrine of promissory estoppel).

Promissory estoppel is applicable when a party's interests are not protected under a contract with full consideration. ***Blue Mountain Mushroom Co., Inc. v. Monterey Mushroom, Inc.***, 246 F.Supp.2d 394, 407-08 (E.D. Pa. 2002)(applying Pennsylvania contract law). *See also* ***Synesiou v. Designtomarket, Inc.***, 2002 WL 501494 at *4 (E.D. Pa. 2002)("[P]romissory estoppel has no application when parties have entered into an enforceable agreement."); ***Reginald Martin Agency, Inc. v. Conseco Medical Insurance Co.***, 478 F.Supp.2d 1076, 1092 (S.D. Ind. 2007)("[U]nder Indiana law, promissory estoppel cannot give rise to a cause of action where a written contract controls the very promise upon which the claim is premised. . . . Plaintiffs have not proffered any evidence that would alter the Court's previous conclusion that a valid contract existed between the parties. Thus, promis-

sory estoppel is not a viable theory of liability due to the existence of these valid written contracts between the parties, and there is no need to further analyze the essential elements of Plaintiffs' claim."). Here, the Blanket Agreement is a valid contract between Response and USS. In fact, nowhere in any of Response's pleadings is there a denial of the existence of a valid contract between these parties. The invocation of promissory estoppel is unnecessary.

Even in the absence of the valid Blanket Agreement, the facts at hand fail to meet the elements of promissory estoppel. Response cites *D & G Stout, Inc. v. Bacardi Imports, Inc.*, 805 F.Supp. 1434 (N.D. Ind. 1992) as a parallel example supporting its promissory estoppel claim. In *D & G Stout*, a distributor sued a supplier under the promissory estoppel theory after termination of a distributorship, alleging that it relied on the supplier's conditional promise to continue as the supplier's distributor when it refused a firm offer by a third party to buy its assets. 805 F.Supp. at 1437. Noting that Indiana courts "appear to have looked to the reasonableness of both the promisor's expectation and the promisee's reliance," the court examined both the promise made and the reliance on that promise. *D & G Stout*, 805 F.Supp. at 1446. There, the court found both reasonable: the supplier should have expected that the distributor would refuse the buy offer based on its promise to continue doing business together, and the distributor was reasonable in

refusing to sell out after receiving the promise of future business from the supplier.[1]

Here, the facts readily are distinguished. The promise in question was made at the luncheon meeting, the two USS representatives promising that Response would "maintain the work that [Response Maintenance] had in [its] areas." (Pltf. Resp. to Mot. Summ. J., pp. 1, 3-4, 12; Dep. of Ryan Niles, p. 14 ("And that with their, not blessing, but with their commitment to us, that we would continue to do the - there was three years left of a blanket agreement that [Response Maintenance] had . . . . and with their consent, if they would tell us *that they would transfer that contract to us* and that we would do three years - three years of the work, that we would then purchase the company.") (emphasis added). The facts consistently presented by Response throughout this litigation are that the Nileses made a presentation to USS and *asked for the Response Maintenance contract to be assigned as a prerequisite to their purchase of the company*. USS promised to do so. Then, after the Nileses completed their purchase, USS went beyond that agreement and offered Response a new five year agreement. The original Blanket Agreement with Response Maintenance contained the identical termination at will clause as the new Blanket Agreement with Response. USS made a promise and kept it. Unlike in *D & G Stout*, USS did not renege.

---

[1] It is important to note that the contractual relationship between the supplier and the distributor in *D & G Stout* was markedly different than here. *See* 805 F.Supp. at 1448 (noting that the parties had an at-will relationship rather than having entered into a binding contract).

16

No claim for promissory estoppel can survive where the promises that a party relied on never were broken. Response lost the continued business with USS solely because it failed to re-bid for its work under the Blanket Agreement, not due to any renouncement by USS.

Count II of the amended complaint alleges breach of contract. Under Pennsylvania law, the requisite elements of a contract breach are (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages. ***Pennsy Supply, Inc. v. American Ash Recycling Corp. of Pennsylvania***, 895 A.2d 595, 600 (Pa. Super. 2006). "Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed." ***Middletown Carpentry, Inc. v. C. Arena & Co., Inc.***, 2003 WL 22725581 at *6 (Pa.Com.Pl. 2003)(*quoting* ***Murphy v. Duquesne University of the Holy Ghost***, 777 A.2d 418, 429 (Pa. 2001).

The parties neither dispute the validity of the contract nor the exercise of the termination at convenience clause. Instead, Response alleges a breach of the remedy provision in the Blanket Agreement after the termination for convenience, Article 29.3(b).[2] However, the pleadings, briefs, and exhibits fail to

---

[2] This court's Opinion and Order of August 1, 2006, found that "the damages provision of Article 29.3 only becomes relevant if a purchase order was in effect at the time USS terminated the Agreement. If no purchase order was in effect, then USS cannot be liable for breach of contract."

include any factual evidence that USS was presented with invoices which were not paid.  There is no evidence before the court which substantiates the claim that Response attempted to recoup expenses under this remedy that USS failed to provide.

Rather, Response's pleadings, briefs, and exhibits attempt to shift to USS all of the costs of purchasing, maintaining, and improving its business as well as all of the future costs and expected profits that it could have reaped had it successfully bid for the work. A party may not enter into a contract containing a termination at convenience clause and then attempt to be reimbursed for all business costs when that clause is invoked. Article 29 is devoted to termination of the contract, so a party cannot expect Article 29.3(b) to cover the remainder of the five years, rather than just the 30 days mentioned in Article 29.3(a). Because the remedy provided in Article 29.3(b) cannot be interpreted to cover these expenses that Response demands, the court finds no facts to support a claim of breach of contract.

Count III of Response's Complaint alleges fraud in the inducement.  A prima facie case of fraud under Pennsylvania law must establish:

> (1) a misrepresentation, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false, (4) with the intent of misleading another into relying on it, (5) justifiable reliance on the misrepresentation, and (6) resulting injury that was proximately caused by the reliance.
>
> ***Gibbs v. Ernst***, 647 A.2d 882, 889 (Pa. 1994)

18

See also *J & J Wehner, Inc. v. H & L Plating & Grinding, Inc.*, 2007 WL 1021417 at *3 (S.D. Ind. 2007)("A claim of fraud requires proof of the following elements: (1) a material misrepresentation of a past or existing fact which, (2) was false, (3) was made with knowledge or in reckless ignorance of the falsity, (4) was relied upon by the complaining party, and (5) proximately caused the complaining party's injury.")(*quoting* ***Anderson v. Indianapolis Ind. AAMCO Dealers Advertising Pool***, 678 N.E.2d 832, 837 (Ind. App. 1997).

Response alleges that the USS representatives at the luncheon meeting gave them "a guarantee of work for three years." (Pltf. Resp. to Mot. Summ. J., p. 16) However, the testimony relied upon in this assertion is incompatible with such a contention. Ryan testified that he *asked for a guarantee* of work for three years, not that he received one. (Pltf. Ex. 7, p. 38) He went on to say that he could not relate the exact words that were spoken in USS's commitment. (Pltf. Ex. 7, p. 46) The facts submitted to support Response's claim of fraud fail to state a false representation made by USS. The Nileses arranged the luncheon meeting in the hopes of convincing USS to consent to the assignment of the agreement with Response Maintenance. The USS representatives agreed to the contract's assignment, then entered into a new, identical five year Blanket Agreement with Response. Because of the failure to show the elements of fraud, this claim cannot withstand summary judgment.

_____

For the foregoing reasons, the Motion to Strike filed by the defendant, United States Steel Corporation, on July 21, 2008, is **DENIED**, and the Motion for Summary Judgment filed by the defendant on May 29, 2008, is **GRANTED.**

ENTERED this 28th day of October, 2008

                                         s/ ANDREW P. RODOVICH
                                             United States Magistrate Judge